UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN BROWN,<br><br>                Plaintiff,<br><br>    v.<br><br>BRENT REINKE, et al.,<br><br>                Respondent. | Case No. 1:11-cv-00104-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff filed a Complaint under 42 U.S.C. § 1983, alleging his constitutional rights were violated because he was denied access to courts when Defendants opened and withheld his legal mail. (Dkt. 3.) Defendants now move to dismiss Plaintiff's Complaint. (Dkt. 17.) All parties have consented to proceed before a U.S. Magistrate Judge. (Dkt. 15). Having reviewed the record, and for the reasons discussed herein, the Court grants the Motion to Dismiss and enters the following Order.

## BACKGROUND

Plaintiff is an inmate housed at the Idaho State Correctional Institution (ISCI). All Defendants are ISCI officials, with the exception of Defendant Loomis, who is a Deputy Attorney General. All are sued in their individual and official capacities.

Plaintiff filed a petition for a writ of habeas corpus in the Ada County District Court on January 5, 2010, and as a part of that case, he challenged the Commission of

**MEMORANDUM DECISION AND ORDER - 1**

Pardons and Parole's decision to not give him credit for the time he spent on parole. (Dkt. 3, p.6.) Plaintiff alleges that in the course of this action, he did not receive important court papers and documents that were filed in the case, including a motion to dismiss and a court order that dismissed his petition for writ of habeas after he failed to respond. (Dkt. 3, p.5.) Plaintiff claims that he did not receive his mail because it was being routed to the Idaho Department of Correction's (IDOC) central office instead of the ISCI, and the Defendants were opening and withholding his mail. (*Id*.)

On May 12, 2010 Plaintiff received legal mail addressed to him, but it contained legal documents for Cameron Ball and was returned to the sender. (*Id.*) On that day, Plaintiff claims he asked Defendant Wright for a copy of the legal mail log, but Wright would not allow Plaintiff to receive a copy. (Dkt. 3, p.7.)

On May 14, 2010, Plaintiff sent a concern form requesting a copy of the legal mail log from the mail room. (*Id.*); *see also* (Dkt. 3-1). Plaintiff received a denial of his request on May 18. (*Id*.) The day after, Plaintiff submitted a grievance on the issue of access to courts, but failed to attach an offender concern form. (Dkt. 17-2, p.5.) Without a concern form attached, the grievance did not meet proper grievance procedure, so it was returned and never processed. (*Id.*) Plaintiff then filed a grievance with the previous request for copies of the mail log on June 12, 2010, which was denied by Defendant Yordy. (Dkt. 3, p.8.) Then on July 4, 2010, Plaintiff's appeal of that grievance was denied by Defendant Smith. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 2**

On July 22, 2010, after the denial of his requests, Plaintiff filed a Tort Claim with the Secretary of State against the IDOC for withholding legal mail, claiming that he did not receive mail and was unable to argue his case, resulting in the dismissal. (Dkt. 3-1, p.5.) Plaintiff then filed his Complaint on March 15, 2011, claiming that by opening and withholding his legal mail, Defendants denied him access to courts in violation of his rights under the Due Process Clause of the Fourteenth Amendment, as well those under the First Amendment. (Dkt. 3.)

Defendants now move to dismiss the Complaint on the ground that Plaintiff has failed to allege facts on which relief could be granted under a constitutional theory that Defendants denied him access to courts. (Dkt. 17, p.3). Additionally, Defendants contend that Plaintiff has failed to exhaust his administrative remedies and has failed to comply with the Idaho Tort Claims Act prior to filing suit.[1] (*Id*.)

The Court will first consider whether Plaintiff properly exhausted his administrative remedies before determining whether he has sufficiently pled a claim for relief.

## DISCUSSION

**1.      Legal Standard for Exhaustion of Administrative Remedies**

An essential prerequisite to filing suit is the exhaustion of administrative remedies. Under the Prison Litigation Reform Act (PLRA), exhaustion is mandatory before pro se

---

[1] The Court is unaware of any state law claims in this action, and Defendants have failed to explain why proper exhaustion of the Idaho Tort Claims Act is a prerequisite for bringing federal claims in a federal lawsuit under 42 U.S.C. §1983.  The Court finds that this argument is not applicable to Plaintiff's claims, and it will therefore not be addressed further.

**MEMORANDUM DECISION AND ORDER - 3**

plaintiffs can bring a claim in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Requiring plaintiffs to exhaust their administrative remedies gives prison officials the chance to "resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Until exhaustion is completed properly, a prisoner's case cannot proceed regardless of the sufficiency of claims.

Proper exhaustion includes a prisoner completing the administrative review process in accordance with all the procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). While the procedural rules are fairly standard, the level of detail required for a proper grievance varies between systems and claims, but is ultimately under the prison's control, and not the PLRA. *Jones*, 549 U.S. at 218. If a prison's rules do not state the required detail needed to be considered a proper grievance, a grievance will suffice "if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Alerting the prison as to the nature of the wrong does not require inclusion of legal terminology or theories, unless they are necessary to give notice to officials of the harm being grieved. *Id*. The grievance does not need to contain "every fact necessary to prove each element of an eventual legal claim," but it must contain enough facts to facilitate a resolution of the problem. *Id.*

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315

F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove exhaustion, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id.*

2.     **The Idaho Department of Correction's Exhaustion Procedure**

The IDOC uses a three-step grievance process that requires a prisoner to first submit an informal Offender Concern Form describing the problem, then file a formal Grievance Form if an informal resolution was not reached, and finally complete the process with an appeal of any adverse decision. (Dkt. 17-2, p.2); *see also* (Dkt. 17-2, Exhibit B, pp. 10–27.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Dkt. 17-2, p.3.) If the issue is not resolved, the prisoner then completes a grievance form and files the grievance within 30 days of the incident. *Id.* The grievance form must contain specific information regarding the nature of the complaint, including dates, places, names, and how the offender has been adversely affected. *Id.* If the grievance is properly completed, the "grievance coordinator" will route it to the appropriate staff member, who must respond within 10 days. *Id.*
After the staff member responds, the grievance coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (Dkt. 17-2, p.4.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to

**MEMORANDUM DECISION AND ORDER - 5**

the "appellate authority," which is usually the facility head. *Id*. Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (Dkt. 17-2, p.5.)

3.      **Plaintiff failed to properly exhaust his administrative remedies.**

Defendants argue that Plaintiff did not exhaust the grievance process set forth in the IDOC policy because he failed to properly grieve his claim that he has been denied access to courts by Defendant IDOC officials Smith, Yordy, and Wright. Defendants contend that Plaintiff merely grieved the fact that he needed a copy of the prison mail log, which did not properly fulfill the exhaustion requirement. Because proper exhaustion is a requirement under the PLRA before brining suit, these Defendants request dismissal of Plaintiff's claims against them.[1]

Dismissal of claims is warranted if a plaintiff does not put prison officials on notice of each claim he plans on bringing in court. The Ninth Circuit's decision in *Griffin v. Arpaio* is instructive on the issue presented in the case at hand. There, the plaintiff was injured as a result of falling from the top bunk in his prison cell. *Id.* at 1118. In order to avoid further injury, he filed a grievance requesting a ladder or some sort of permanent step. *Id*. A nurse then assigned him a lower bunk, and prison officials noted on his grievance form that the nurse's order resolved his problem. *Id.* at 1119. Because prison staff disregarded the nurse's order, the plaintiff appealed his grievance, continuing to

---

[1] Defendants seek dismissal of claims only with respect to those employed directly by the IDOC. Because Defendant Loomis is an Idaho Deputy Attorney General, it appears that Defendants do not seek dismissal of Plaintiff's claims against him on exhaustion grounds.

**MEMORANDUM DECISION AND ORDER - 6**

demand better access to the top bunk. *Id.* The Ninth Circuit found that, while notification did not require allegations of deliberate indifference to suffice, it did require more than a demand for a ladder. *Id.* at 1121. The officials responding to the grievance assumed the nurse's order resolved the issue, so without more information, prison officials could not take "appropriate responsive measures." *Id*. Therefore, the plaintiff did not alert the prison to the nature of his problem, and the Ninth Circuit held that his claims were not properly exhausted. *Id.*

Here, Plaintiff's concern form and grievance have the same insufficiencies as the grievance in *Griffin*. Plaintiff filed a concern form that said he received legal mail that contained paperwork for Cameron Ball, and needed a copy of what the official on duty wrote on the piece of mail. After Defendant Wright said he had no time to find the copy, Plaintiff filed a grievance that merely asked for a copy of the mail log for an on-going case because he needed the notation acknowledging that the paperwork inside was for Cameron Ball. Defendant Wright then responded that he returned the letter to the sender the same day. Defendant Yordy then responded that the log is for departmental purposes, and would be provided if the court were to ask for it in the on-going case. On appeal of the grievance, Defendant Smith agreed with the prior responses and denied copies of the mail logs.

While the concern and grievance forms stated facts and a possible resolution, they cannot be held sufficient as to putting the prison officials on notice of the denial of access

**MEMORANDUM DECISION AND ORDER - 7**

to courts claim Plaintiff now asserts. Defendants assumed that the only reason Plaintiff needed the mail logs was for an on-going case, a situation in which the court would order the copies to be given to Plaintiff if needed. While Plaintiff was not required to grieve the legal theory of denial of access to courts, Defendants needed more specific facts that would put them on notice to address a claim of withholding legal mail. The grievances needed to go beyond requesting a copy of the mail log.

     Had Plaintiff's grievance form included an explanation of the mail that was withheld and the resulting, and allegedly on-going, injury of denial of access to courts, the prison officials would have been put on notice and could have responded accordingly. Plaintiff had the knowledge to submit such a grievance because he did so at one time, but failed to attach a concern form pursuant to the IDOC grievance procedures. This factually-adequate grievance was never processed because it did not comply with the prison's procedure. Therefore, Plaintiff did not grieve his claims properly, and did not allow prison officials the chance to remedy the situation. Because of this insufficiency, Defendants have met their burden of showing Plaintiff failed to properly exhaust his claims and therefore, his Complaint must be dismissed as to the Defendant IDOC officials.

**MEMORANDUM DECISION AND ORDER - 8**

**4.    Even if the Plaintiff had properly exhausted all administrative remedies, his Complaint must be dismissed for failure to state a claim upon which relief can be granted.**

The standard for reviewing complaints subject to a motion to dismiss is set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the Court ruled that a complaint may survive a motion to dismiss only if taking the well-pleaded facts as true, there is enough to state a plausible claim to relief. *Id.* at 678–79. The nonmoving party, though, may not merely claim that it will discredit the moving party's evidence at trial, but must state specific facts that will support a claim to relief. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Missing facts in a complaint will not be presumed in the nonmoving party's favor, and a nonmoving party's subsequent filing of an affidavit or response that contains conclusory, nonspecific statements will not be sufficient to overcome a motion to dismiss. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

While the general *Iqbal* standard is considered for all motions to dismiss, there is a slight variation of the standard for pro se litigants. Inmates that file complaints pro se "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, pro se status does not free a litigant from complying with the applicable rules of procedural and substantive law. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

**MEMORANDUM DECISION AND ORDER - 9**

In order for an inmate to state a claim for denial of access to the courts due to interference with legal mail, he must allege that the defendants were responsible for actions that interfered with the plaintiff's ability to pursue a legal claim. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). This allegation must include a claim of actual injury, and show plausibility that the defendants frustrated "the plaintiff's efforts to pursue a nonfrivolous claim." *Lewis v. Casey*, 518 U.S. 343, 353 (1996). Without this showing of actual injury caused by the defendants to an underlying nonfrivolous claim, a plaintiff may not proceed and his complaint must be dismissed for failure to state a claim.

In *Galeas v. Inpold*, the plaintiff failed to allege specific facts to show plausibility that the defendant's interference with the plaintiff's legal mail led to a denial of access to courts. *See* 2012 WL 628229, at *2 (W.D. N.C. Feb. 28, 2012). The plaintiff produced documentation with the defendant's signature, but made no allegations in reference to the defendant's active or intentional interference with the mail. *Id*. The defendant claimed that her signature on the document was only a single link in the chain by which mail moves through the mailroom and to the inmates. *Id.* Because there were no allegations as to the specific actions of the defendant that caused denial of access to courts, the plaintiff's complaint was dismissed. *Id.* at *3.

Here, the same problem is presented. Plaintiff merely alleges that Defendants were those officials in the mailroom, and those who addressed his grievances. Nowhere in the Complaint does Plaintiff allege facts that show plausibility that any or all defendants were

**MEMORANDUM DECISION AND ORDER - 10**

the cause of his mail being withheld. Even if a copy of the mail log had been obtained, Plaintiff would need to link each defendant to the actions recorded on the log. Plaintiff stated no allegations as to the specific actions of the defendants that caused a denial of access to courts.

Perhaps more importantly, Plaintiff does not show that the underlying claim is nonfrivolous. A showing that the defendant interfered with a *nonfrivolous* case being pursued in court is an essential part of a denial of access to courts claim. *Lewis*, 518 U.S. at 353 (emphasis added). Without that showing, a plaintiff cannot claim he was denied access to courts because a frivolous case cannot proceed to court regardless of a plaintiff's procedural mistakes that may or may not have been caused by a defendant. *See id.*

Plaintiff contends that his habeas corpus case was dismissed because Defendants opened and withheld legal mail that pertained to his on-going case. In this habeas case, Plaintiff argued that the Idaho Commission of Pardons and Parole's decision to not give him credit for time on parole was incorrect and unwarranted. However, according to Idaho Code § 20-228, it is in the Commission of Pardons and Parole's discretion to determine if parole should be deemed part of a prisoner's sentence. Therefore, the Commission has the authority to forfeit time spent on parole.

Additionally, in *Gibson v. Bennett*, the Idaho Court of Appeals ruled that I.C. § 20-228 applies to all time spent on parole, not only that spent on suspended parole; and the

**MEMORANDUM DECISION AND ORDER - 11**

Commission's authority and discretion is followed in decisions of whether to credit the time towards a prisoner's sentence. 108 P.3d 417, 422 (Id. Ct. App. 2005). Because Idaho's statutory and case law appears clear on this matter, the fact Plaintiff was unable to respond to the motion to dismiss because he states he did not receive it is of no import. There was no argument that he could have made that would have changed this clear precedent. The dismissal of his habeas corpus matter was not a legally cognizable injury for which he may pursue relief based on a theory of the denial of access to the courts. For these reasons, Plaintiff's Complaint will be dismissed as to all Defendants.

## ORDER

**IT IS ORDERED:**

1. Defendants' Amended Motion to Dismiss (Dkt. 17) based on Plaintiff's failure to exhaust his administrative remedies and failure to state a plausible claim for relief, is **GRANTED**.  The Complaint is **DISMISSED**.



DATED: August 28, 2012

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**